UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KRISTIN McCOLLUM, individually, by and through her conservator, Paula McCollum,<br><br>Plaintiff,<br><br>v.<br><br>BLUE SHIELD OF CALIFORNIA LIFE AND HEALTH INSURANCE COMPANY,<br><br>Defendant. | Case No.: 12-01650 PSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>**(Re: Docket. 26)** |

Defendant Blue Shield of California Life and Health Insurance Co. ("Blue Shield") moves to dismiss Plaintiff Kristin McCollum's ("McCollum") second claim for relief. Having considered the parties' papers and arguments, the court GRANTS Blue Shield's motion.

## I. BACKGROUND

Except where otherwise noted, the court draws the following facts, taken as true for the purposes of a motion to dismiss, from McCollum's complaint.[1] In December 2010, McCollum suffered traumatic brain injury and numerous other injuries after her car hit a tree while traveling at sixty miles per hour.[2] After four months in the Santa Clara Valley Medical Center, on April 25, 2011, McCollum was transferred to the Centre for Neuro Skills ("CNS") in Bakersfield, California,

---

[1] *See* Docket No. 1.

[2] *See id.* ¶ 8.

1

Case No.: 12-1650
ORDER

for "intensive post-acute medical rehabilitation."[3] As part of her treatment, she receives physical therapy, occupational therapy, speech therapy, and counseling.[4]

Blue Shield initially approved McCollum's care at CNS from April 25, 2011 to May 8, 2011 as "alternative benefits" "in lieu of a Skilled Nursing Facility."[5] On May 9, 2011, Blue Shield denied further benefits for McCollum because "there [was] no documentation to substantiate the rehabilitation potential for cognitive, motor, and behavioral skills."[6] After CNS's appeal on McCollum's behalf, on May 18, 2011, Blue Shield reversed its earlier denial and approved benefits until May 27, 2011.[7] On June 2, 2011, Blue Shield changed course again, denying McCollum's continued treatment at CNS on the grounds that CNS was a "Transitional Living Program," a type of benefit Blue Shield claimed McCollum's health plan does not cover.[8] Blue Shield also went back and reclassified its prior approval of care at CNS as benefits for a "Transitional Living Program."[9] McCollum's course of treatment at CNS has not changed.[10]

On November 28, 2011, McCollum appealed the denial of benefits at CNS and provided medical reports detailing her continued need for the medical care provided at CNS.[11] To support her appeal, McCollum requested her ERISA plan documents from Blue Shield on three separate

---

[3] *See id.* ¶ 12.

[4] *See id.* ¶ 13.

[5] *See id.* ¶ 15.

[6] *See id.* ¶ 16.

[7] *See id.* ¶ 18.

[8] *See id.* ¶ 19.

[9] *See id.*

[10] *See id.* ¶ 20.

[11] *See id.* ¶ 21.

2
Case No.: 12-1650
ORDER

dates – June 27, 2011, July 20, 2011, and August 15, 2011.[12]  Blue Shield never provided the requested documents.[13]

McCollum filed the instant ERISA action against Blue Shield and raised four claims: (1) unlawful denial of benefits; (2) violations of 29 U.S.C. §§ 1024 and 1132(c)(1)[14] for failure to provide the plan materials she requested; and (3) equitable relief pursuant to 29 U.S.C. § 1132(a)(1)(B).  On July 17, 2012, Blue Shield moved to dismiss the second claim of violations of 29 U.S.C. §§ 1024 and 1132(c)(1).

## II.   LEGAL STANDARDS

A complaint must state a "short plain statement of the claim showing that the pleader is entitled to relief."[15]  While "detailed factual allegations" are not required, a complaint must include more than an unadorned, the defendant-unlawfully-harmed-me accusation."[16]  In other words, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face."[17]  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18]  Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can be based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[19]

---

[12] *See id.* ¶ 31.

[13] *See id.* ¶ 32.

[14] In the complaint, McCollum cited 20 U.S.C. § 1132(c)(3) but has since noted this typographical error. *See* Docket No. 29.

[15] Fed. R. Civ. P. 8(a)(2).

[16] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

[17] *Id.* at 1940 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[18] *Id.*

[19] *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[20] Review of a motion to dismiss is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[21] The court is not required to accept "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."[22] Further, the court need not accept as true allegations that contradict matters that are either subject to judicial notice or attached as exhibits to the complaint.[23]

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment."[24] A dismissal with prejudice, except one for lack of jurisdiction, improper venue, or failure to join a party operates as an adjudication on the merits.[25] Dismissal without leave to amend, however, may be denied for reasons of undue delay, bad faith, repeated failure to cure deficiencies by previous amendments, futility of the amendment, and prejudice.[26]

---

[20] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[21] *See id.* at 1061.

[22] *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

[23] *See In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

[24] *Eminence Capital, LLC. V. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[25] Fed. R. Civ. P. 41(b).

[26] *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

## III.  DISCUSSION

As an initial matter, the court addresses Blue Shield's request to take judicial notice of the Group Plan governing its coverage of McCollum.[27]  When ruling on a Rule 12(b)(6) motion, the court generally is limited to evaluation only of the pleadings but may consider outside material where "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint."[28]

Here, the parties do not dispute the authenticity of the documents Blue Shield submitted with its motion to dismiss.[29]  McCollum's claims depend on her participation in an ERISA plan with insurance provided by Blue Shield.  The court thus finds her complaint incorporates by reference the Group Plan and, as a result, judicial notice of the document is appropriate.

Turning to the claim at issue, pursuant to 29 U.S.C. § 1024(b)(4), ERISA plan administrators must "upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  Pursuant to 29 U.S.C. § 1132(c)(1), administrators who fail to provide the requested documents within thirty days of the request may "in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date

---

[27] *See* Docket No. 28.

[28] *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), superseded in part by statute on other grounds as stated in *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006)); *see also Porras v. StubHub, Inc.*, Case No. C 12-1225 MMC, 2012 WL 3835073, at *2 (N.D. Cal. Sept. 4, 2012).

[29] *See* Docket No. 28 Ex. A.

5
Case No.: 12-1650
ORDER

of such failure or refusal." "[T]he court may in its discretion order such other relief as it deems proper."[30]

McCollum alleges in her complaint that Blue Shield is the plan administrator and therefore is liable under Section 1132(c)(1) for civil penalties for its failure to provide her with the requested documents.[31] Blue Shield argues that it is not the plan administrator, as defined in the Group Plan or under ERISA's definition of "plan administrator," and thus cannot be subject to liability under Section 1132(c)(1) as a matter of law.[32]

ERISA defines a plan administrator as an entity meeting one of three requirements: (1) "the person specifically so designated by the terms of the instrument under which the plan is operated"; (2) "if an administrator is not so designated, the plan sponsor"; or (3) "in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe."[33] A plan sponsor is: (1) "the employer in the case of an employee benefit plan established or maintained by a single employer"; (2) "the employee organization in the case of a plan established or maintained by an employee organization"; or (3) "in the case of a plan established or maintained by two or more employers . . . the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan."[34]

According to the Group Plan, if ERISA governs the policy, "it is understood that Blue Shield . . . is not the plan administrator for the purposes of ERISA."[35] Rather, "[t]he plan

---

[30] 29 U.S.C. § 1132(c)(1).

[31] *See* Docket No. 1 ¶ 30.

[32] *See* Docket No. 26.

[33] 29 U.S.C. § 1002(16)(A).

[34] *Id.* § 1002(16)(B).

6

Case No.: 12-1650
ORDER

administrator is the Policyholder."[36]  The Group Plan identifies Club Surf Inc. dba Pizza My Heart Inc. ("Club Surf"), McCollum's employer, as the policyholder.[37]  Under the plain language in the Group Plan, McCollum's plan administrator, as designated in the "instrument under which the plan is operated," thus is Club Surf not Blue Shield.[38]

Even if the Group Plan did not specifically identify a plan administrator, ERISA provides that in such an event, the plan administrator is the "plan sponsor,"[39] which it defines, in part, as "the employer" when the employer has "established and maintained" the plan.[40]  McCollum alleges in her complaint that the Group Plan was an "employee welfare benefit plan regulated ERISA"[41] and that qualifies the plan as one "established and maintained" by her employer.[42]  Thus, under either definition, Club Surf is the plan administrator.

McCollum responds that if her allegations that Blue Shield is the plan administrator are insufficient, Blue Shield nevertheless is "an ERISA fiduciary liable for [§] 1132(c) penalties" pursuant to the Ninth Circuit's decision in *Cyr v. Reliance Standard Life Ins. Co.*[43]  *Cyr* is inapposite, however, because there the Ninth Circuit determined only that in claims brought under

---

[35] Docket No. 28 at 31.

[36] *Id.*

[37] *Id.* at 12.

[38] *See* 29 U.S.C. § 1102(16)(A); *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 300 (9th Cir. 1989) ("The statute expressly identifies in section 1002(16) the persons or entities that may be sued under section 1132(c).").

[39] *See* 29 U.S.C. § 1102(16)(A)(ii).

[40] *See id.* § 1102(16)(B)(i).

[41] *See* Docket No. 1 ¶ 2.

[42] *See* 29 U.S.C. § 1102(1) ("The terms 'employee welfare benefit plan' . . . mean any plan, fund or program which was . . . established or maintained by an employer or by an employee organization . . . .").

[43] 642 F.3d 1202 (9th Cir. 2011).

Section 1132(a)(1)(B) potential defendants should not be limited to plans and plan administrators.[44] Section 1132(a)(1)(B) provides that participants in an employee benefit plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." But Section 1132(a)(1)(B) is irrelevant to the determination of liability under Section 1132(c) in light of Section 1132(a)(1)(A), which provides that participants may bring civil actions "for the relief provided for in subsection (c) of this section." And Section 1132(c) establishes liability only for plan administrators.

Indeed, the Ninth Circuit has instructed against a *de facto* plan administrator theory under Section 1132(c).[45] Even where "a third party makes the benefit determination" such that "the administrator may not have the needed documents on hand," the liable party remains the administrator.[46] Section 1132(c)(1) does not render a "third party directly liable to beneficiaries as if it were itself an 'administrator.'"[47]

Because the plain language of the statute and Ninth Circuit precedent limit liability under Section 1132(c)(1) to "plan administrators" and the Group Plan identifies Club Surf as the "plan administrator" for McCollum's benefits, the court finds dismissal of the second claim is appropriate. In light of the judicially-noticed Group Plan, the court finds further amendment of the complaint would be futile, and so the claim is dismissed with prejudice.

## IV. CONCLUSION

Blue Shield's motion to dismiss the second claim in McCollum's complaint is GRANTED. The second claim is dismissed with prejudice.

---

[44] 642 F.3d at 1207.

[45] *See Sgro v. Danone Waters of North America, Inc.*, 532 F.3d 940, 945 (9th Cir. 2008).

[46] *Id.*

[47] *Id.*; *see also Moran*, 872 F.2d at 299-300.

**IT IS SO ORDERED.**

Dated:   November 2, 2012

                                                     _____
PAUL S. GREWAL
United States Magistrate Judge

9

Case No.: 12-1650
ORDER